**David N. OSOLINSKI, Plaintiff–Appellee,**

v.

**Lt. KANE, et al., Defendants–Appellants.**

No. 94–16929.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 17, 1995.

Decided Aug. 12, 1996.

Bruce M. Slavin, Deputy Attorney General, and Catherine A. McBrien, Deputy Attorney General, San Francisco, California, for defendants-appellants.

Carter C. White, University of California at Davis School of Law; and Karen Heald and Beth Terrell, certified students, Davis, California, for plaintiff-appellee.

Before: WALLACE and LEAVY, Circuit Judges, and BAIRD, District Judge.*

BAIRD, District Judge:

In this 42 U.S.C. § 1983 case, the district court denied appellants' motion for summary judgment, finding that appellants' qualified immunity argument was without merit. Ap-

935

pellee, a prisoner in the custody of the California Department of Corrections at the California Medical Facility ("the Facility") in Vacaville, California, brought suit .after he suffered second-degree burns on his arm when an oven door fell off its hinges in the Facility's family visiting unit. Appellants are officials at the Facility responsible for the family visiting unit. Appellants argue that the district court erred in denying them qualified immunity. We agree.

## I.

The following, facts before the District Court were not in dispute.[1] Appellee was a state prisoner at the Facility who sustained a second degree burn on his outer right forearm on July 19, 1992. Appellee was burned when a door of an oven in the family visiting unit fell off its hinges. Prior maintenance requests for the oven door had been submitted on November 11, 1991, on January 15, 1992, and on May 4, 1992. None of the requested repairs had been undertaken before appellee sustained his burn. Appellant Kane was the Visiting Room Lieutenant, appellant Barnes was the Family Visiting Officer, and appellant Smith was the plant operations manager.

Appellee alleged a violation of the Eighth Amendment based on the prison officials' failure to fix the offending oven door despite the maintenance requests. Appellants sought summary judgment based on the affirmative defense of qualified immunity, among other grounds. The district court summarily denied appellants' qualified immunity defense without engaging in the analysis discussed below.

## II.

A district court's order denying a defendant's motion for summary judgment is an immediately appealable collateral order where (1) the defendant is a public official asserting a defense of qualified immunity, and (2) the issue appealed concerns not

---

* The Honorable Lourdes G. Baird, United States District Court Judge for the Central District of California, sitting by designation.

1. Appellants admitted the above-described facts in their answer, *see* Fed.R.Civ.P. 8, and motion for summary judgment.

which facts the parties may be able to prove but, rather, whether certain given facts show a violation of clearly established law. *Johnson v. Jones,* —— U.S. ——, ——, 115 S.Ct. 2151, 2155, 132 L.Ed.2d 238 (1995) (citing *Mitchell v. Forsyth,* 472 U.S. 511, 528, 105 S.Ct. 2806, 2816–17, 86 L.Ed.2d 411 (1985)). "[A] defendant, entitled to invoke a qualified-immunity defense, may not appeal a district court's summary judgment order insofar as that order determines whether or not the pretrial record sets forth a 'genuine' issue of fact for trial." *Id.* at ——, 115 S.Ct. at 2159.

The Supreme Court in *Behrens v. Pelletier,* —— U.S. ——, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996), clarified its holding in *Johnson, supra,* by reaffirming that "summary-judgment determinations are appealable when they resolve a dispute concerning an abstract issu[e] of law, relating to qualified immunity, typically, the issue whether the federal right allegedly infringed was 'clearly established'." *Id.* at ——, 116 S.Ct. at 842 (citations omitted).

In *Pellegrino v. United States,* 73 F.3d 934 (9th Cir.1996), this court interpreted *Johnson* for the first time. The *Pellegrino* court held that it did not have jurisdiction over the appeal of a denial of qualified immunity because the summary judgment record raised genuine issues of material fact with respect to the claim at issue. The *Pellegrino* court stated: "[t]he district court could not resolve the disputed facts with respect to the remaining claims against [defendant-appellant] and neither should we." *Id.* at 937. In contrast to *Pellegrino,* the facts alleged in the record before us are not in dispute.

Appellees assert that the element of appellants' deliberate indifference is in dispute and, therefore, a genuine issue of fact exists. However, we confine our inquiry to the objective requirement of the Eighth Amendment and therefore do not address deliberate indifference. Because the issue appealed here concerns not which facts the parties may be able to prove but whether certain given facts show a violation of clearly established law, we conclude that we have jurisdiction.

## III.

This Court reviews a denial of qualified immunity *de novo. Act Up!/Portland v. Bagley,* 988 F.2d 868, 871 (9th Cir.1993).

When a public official asserts qualified immunity from liability, the district court must determine whether, in light of clearly established principles governing the conduct in question, the official objectively could have believed that his conduct was lawful. *See Anderson v. Creighton,* 483 U.S. 635, 641, 107 S.Ct. 3034, 3039–40, 97 L.Ed.2d 523 (1987); *Act Up!/Portland,* 988 F.2d at 871. "Defendants are entitled to qualified immunity only 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Allen v. Sakai,* 48 F.3d 1082, 1087 (9th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 1695, 131 L.Ed.2d 559 (1995) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). A public official is not entitled to qualified immunity when the contours of the allegedly violated right were "sufficiently clear that a reasonable official would understand that what he [was] doing violate[d] that right." *Id.* (quoting *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987)).

Absent binding precedent, we look to all available decisional law, including the law of other circuits and district courts, to determine whether the right was clearly established. *Lum v. Jensen,* 876 F.2d 1385, 1387 (9th Cir.1989), *cert. denied,* 493 U.S. 1057, 110 S.Ct. 867, 107 L.Ed.2d 951 (1990). We also evaluate the likelihood that this circuit or the Supreme Court would have reached the same result. *Id.* Generally, courts do not look to post-incident cases to determine whether the law was clearly established at the time of the incident. *Baker v. Racansky,* 887 F.2d 183, 187 (9th Cir.1989). However, post-incident cases that make a determination regarding the state of the law at the time of the incident are persuasive authority. *Id.*

The Eighth Amendment, which prohibits "cruel and unusual punishments," imposes a duty on prison officials to provide

humane conditions of confinement and to take reasonable measures to guarantee the safety of the inmates. However, every injury suffered by an inmate does not necessarily translate into constitutional liability for prison officials. An Eighth Amendment claim against a prison official must meet two requirements, one subjective and one objective. *Farmer v. Brennan*, 511 U.S. 825, ——, 114 S.Ct. 1970, 1976, 128 L.Ed.2d 811 (1994). Under the subjective requirement of the Eighth Amendment, the prison official must have acted with deliberate indifference to inmate safety. *Id.* at ——, 114 S.Ct. at 1977. For the purpose of this threshold qualified immunity analysis, we need not reach the question whether the facts alleged show that appellants acted with deliberate indifference. The focus of our review is the objective requirement. We review Eighth Amendment law to determine whether, in light of clearly established principles at the time of the incident, the officials could have believed their conduct was lawful. *See Anderson*, 483 U.S. at 641, 107 S.Ct. at 3039–40.

In *Rhodes v. Chapman*, 452 U.S. 337, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981), two inmates at the Southern Ohio Correctional Facility ("SOCF") asserted a cause of action under 42 U.S.C. § 1983, claiming that double celling violated the Constitution. The district court ruled that double celling at SOCF constituted cruel and unusual punishment, based on five considerations: (1) inmates at SOCF were serving long terms of imprisonment, accentuating problems of close confinement; (2) SOCF was housing thirty-eight percent more inmates at the time of trial than its design capacity, and that overcrowding necessarily involved limitations on general movement as well as physical and mental injury from "long exposure"; (3) the court accepted as a contemporary standard of decency studies showing that each person in an institution should have fifty to fifty-five square feet of living quarters minimum, while double celled inmates at SOCF shared sixty-three square feet; (4) a double celled prisoner would spend most of his time in his cell with his cellmate; and (5) at SOCF, double celling was a practice, not a temporary condition. *Id.* at 343–44, 101 S.Ct. at 2397–98. The Supreme Court stated: "[C]onditions that

cannot be said to be cruel and unusual under contemporary standards are not unconstitutional. To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Id.* at 347, 101 S.Ct. at 2399. The Supreme Court held that the considerations on which the district court relied were insufficient to support its constitutional conclusion. *Id.* at 348, 101 S.Ct. at 2400.

In *Wilson v. Seiter*, 501 U.S. 294, 298, 111 S.Ct. 2321, 2323–24, 115 L.Ed.2d 271 (1991), the Court described the holding of *Rhodes:*

> The Constitution, we said, "does not mandate comfortable prisons," and only those deprivations denying "the minimal civilized measure of life's necessities," are sufficiently grave to form the basis of an Eighth Amendment violation.
>
> Our holding in *Rhodes* turned on the objective component of an Eighth Amendment prison claim (Was the deprivation sufficiently serious?), and we did not consider the subjective component (Did the officials act with a sufficiently culpable state of mind?).

*Id.* at 298, 111 S.Ct. at 2324 (citations omitted).

The *Wilson* court further explained:

> *Some* conditions of confinement may establish an Eighth Amendment violation "in combination" when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise—for example, a low cell temperature at night combined with a failure to issue blankets.

*Id.* at 304, 111 S.Ct. at 2327 (emphasis in original). We must determine whether it was clearly established in 1992 that a prison official who failed to repair a malfunctioning oven door created a sufficiently serious deprivation of a human need to violate the Eighth Amendment.

Appellants' failure to repair the oven put at issue appellee's need for personal safety. In *Hoptowit v. Spellman*, 753 F.2d 779, 784 (9th Cir.1985) (citations omitted), the court wrote:

Persons involuntarily confined by the state have a constitutional right to safe conditions of confinement. Not every deviation from ideally safe conditions amounts to a constitutional violation. However, the Eighth Amendment entitles inmates in a penal institution to an adequate level of personal safety.

The *Hoptowit* court affirmed that the following combination of conditions was sufficiently serious to support a finding of a violation of the Eighth Amendment: serious safety hazards found in occupational areas exacerbated by the inadequate lighting, which seriously threatened the safety and security of inmates. *Id.*

No cases in this circuit clearly established that a single defective device, without any other conditions contributing to the threat to an inmates' safety, created an objectively insufficiently humane condition violative of the Eighth Amendment. *Hoptowit* involved a condition—bad lighting—which exacerbated the inherent dangerousness of already-existing hazards, such that those hazards "seriously threatened the safety and security of inmates." *Id.* Appellee has not pled any such exacerbating conditions. In particular, appellee has not pled any conditions which rendered him unable to "provide for [his] own safety" in the sense that they precluded him from avoiding the faulty oven door or rendered him unable to perceive its defective condition. *See id.*

■ On appeal, appellants rely on *Tunstall v. Rowe*, 478 F.Supp. 87 (N.D.Ill.1979), and *Snyder v. Blankenship*, 473 F.Supp. 1208 (W.D.Va.1979), aff'd. 618 F.2d 104 (4th Cir.1980), *cert. denied*, 446 U.S. 942, 100 S.Ct. 2167, 64 L.Ed.2d 797 (1980).[2] These pre-*Rhodes* cases do not distinguish clearly between the subjective and objective prongs of the Eighth Amendment analysis. In each,

however, minor safety hazards were found not to violate the Eighth Amendment. *See Tunstall*, 478 F.Supp. at 89 (the existence of a greasy staircase which caused a prisoner to slip and fall did not violate the Eighth Amendment); *Snyder*, 473 F.Supp. at 1212 (failure to repair leaking dishwasher which resulted in a pool of soapy water in which prisoner slipped did not violate Eighth Amendment); *see also Robinson v. Cuyler*, 511 F.Supp. 161, 163 (E.D.Pa.1981) ("[a] slippery kitchen floor does not inflict 'cruel and unusual punishments' ").[3]

In *Arnold v. South Carolina Dep't of Corrections*, 843 F.Supp. 110 (D.S.C.1994), the court sought to determine whether injury caused by a deliberately indifferent failure to maintain a steam pot violated a clearly established Eighth Amendment right. The relevant conduct took place in February, 1992, and therefore the Arnold court's survey of the law is relevant here. *See Baker v. Racansky*, 887 F.2d 183, 187 (9th Cir.1989). The *Arnold* court found no other cases in which malfunctioning kitchen equipment that caused injury supported a civil rights violation. 843 F.Supp. at 114. Accordingly, the court held that whether the Eighth Amendment applies to malfunctioning kitchen equipment is questionable, and therefore certainly not "clearly established" for purposes of qualified immunity. *Id.*

Appellee relies on *Gill v. Mooney*, 824 F.2d 192 (2d Cir.1987). In *Gill*, an inmate alleged that a prison official had ordered him to continue working on a defective ladder although the official knew the ladder was unsafe. The Second Circuit held that the inmate stated a claim for an Eighth Amendment violation. *Id.* at 195. In *Gill*, the unsafe nature of the ladder posed an immediate threat to the inmate because the prison official ordered the inmate to use the

---

**2.** Although appellants did not cite the cases discussed herein before the district court, appellate review of qualified immunity dispositions is to be conducted in light of all relevant precedents, not simply those cited to or discovered by the district court. *Elder v. Holloway*, 510 U.S. 510, 515–16, 114 S.Ct. 1019, 1023, 127 L.Ed.2d 344 (1994).

**3.** Appellants cite *Bibbs v. Armontrout*, 943 F.2d 26 (8th Cir.1991), *cert. denied*, 502 U.S. 1110,

112 S.Ct. 1212, 117 L.Ed.2d 450 (1992), in which a prisoner lost two fingers because a machine with which he was working had had its safety guards removed. The circuit court affirmed dismissal because it determined that the prison officials' conduct in ignoring the hazard was mere negligence. *Bibbs* is inapposite here because its holding turns on the inmate's failure to show deliberate indifference, rather than to show deprivation of a basic need.

 

ladder. The order to remain on the ladder in *Gill* exacerbated the inherent dangerousness of the defective ladder, rendering the ladder a serious safety hazard, akin to those found in *Hoptowit*. In our case, appellee has not pled facts rising to the level of a serious safety hazard.

Based on our analysis of relevant law, we conclude that in light of clearly established principles at the time of the incident a reasonable prison official could have believed that the failure to repair an oven as alleged did not violate the Eighth Amendment. Therefore, appellants are entitled to qualified immunity, and summary judgment must be granted.

### IV.

For the reasons set forth above, the ruling of the district court is REVERSED and REMANDED with instructions to dismiss the action.